## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**17-1041**

**STATE OF LOUISIANA**

**VERSUS**

**JOSE ISREAL AYALA, III**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 86,777
HONORABLE VERNON B. CLARK, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## VAN H. KYZAR
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders and Van H. Kyzar, Judges.

**AFFIRMED.**

Peggy J. Sullivan
Louisiana Appellate Project
P. O. Box 2806
Monroe, LA 71207-2806
(318) 855-6038
COUNSEL FOR DEFENDANT/APPELLANT:
    Jose Isreal Ayala, III

Asa Allen Skinner
District Attorney
Terry Wayne Lambright
First Assistant District Attorney
30th Judicial District
P. O. Box 1188
Leesville, LA 71446-1188
(337) 239-2008
COUNSEL FOR PLAINTIFF/APPELLEE:
    State of Louisiana

**KYZAR, Judge.**

The defendant, Jose Isreal Ayala, III, appeals his sentences imposed following guilty pleas to the offenses of manslaughter and obstruction of justice, entered pursuant to a plea agreement with the State of Louisiana. For the reasons assigned, we affirm.

## Facts and Procedural History

Defendant was indicted on September 4, 2014 by the Vernon Parish Grand Jury for second degree murder and obstruction of justice, violations of La.R.S. 14:30.1 and La.R.S. 14:130.1. On April 27, 2017, Defendant pled guilty to the lesser offense of manslaughter and to obstruction of justice, along with the offense of aggravated escape, an offense charged under a separate docket number and which is also subject to an appeal of the sentence imposed in a separate appeal before this court.

The record contains the following facts recited at the plea hearing:

BY MR. SEASTRUNK:

Yes, sir, Judge, under the Bill of Indictment 86,777, the State believes that it could show that back on the morning of March the 29th, 2014, the State submits that the evidence will show that the victim, Jamie[1] (spelled phonetically) Stephens, went to the home of Shannon Perkins, who he had dated off and on. Shannon's daughter, Cassandra Ward, a codefendant, had spent the night there with the defendant, Jose Ayala, and Cassandra's daughter, Ryleigh. The State submits that as Cassandra Ward saw Jamie Stephens walking up the driveway, she instructed the defendant to take her daughter and go into a room in the rear of the trailer. The State submits that Jamie Stephens walked up the driveway to the rear porch of Shannon's trailer to a sliding glass door, where he was confronted by Cassandra Ward. It is contended that, through the glass door, Cassandra Ward advised Jamie that her mother was not there and that he needed to leave. We submit that words may have been exchanged, but the evidence would show that the victim had no weapon, that the victim made no attempt to get into the home. The evidence would show that, without cause and without solicitation, the defendant, Jose Ayala, emerged from the back room of the trailer and handed Cassandra Ward her daughter, Ryleigh, moving quickly,

---

[1] The prosecutor identified the victim as "Jamie." The indictment shows his first name as "James."

urgently down the hall to a rear door that opened unto -- onto the back porch. The State submits that a room rented by the defendant, at the end of the hall, contains what the State contends was an S.K.S. rifle, which the defendant grabbed prior to going onto the porch. The state submits that the defendant, Ayala, intentionally confronted Jamie Stephens, although Jamie had not engaged the defendant, had not confronted the defendant in any manner. Jamie had not attempted to get into the home, and the defendant was safely locked inside the home. Yet, the defendant intentionally exited onto the porch and confronted Jamie, while armed with a firearm. The State submits that the codefendant, Cassandra Ward, heard the defendant fire what she believed, Judge, was a warning shot and sees the victim turn from the sliding glass door toward the rear side door and telling the defendant, "I'm not afraid of you," and then she hears four or five rapid shots. The evidence would show that the defendant re-enters the trailer, requesting a blanket to cover the victim's body, where the codefendant gives the defendant a blanket. Thereafter, Cassandra Ward hears the defendant make a phone call to another codefendant, Matthew Andrews, telling him, bring the shovels. The evidence will show that Matthew Andrews showed up at 2409 [sic] Bailey Road with the shovels and helped defendant, Ayala, load the victim's body into Cassandra Ward's vehicle. The evidence will show that the parties, along with Cassandra Ward's daughter, traveled to a location out on Highway 1211 in Vernon Parish, Louisiana where they dug a shallow grave and buried the body of James Stephens. Thereafter, the State submits that the defendant traveled back to 2409 [sic] Bailey Road, where he, along with the codefendant, Cassandra Ward, used [a] water hose and bleach to destroy the evidence of Jamie's murder. Washed the grass, washed the porch, bleached the porch to conceal the -- the murder. It was further contended by the State, that within the week after Jamie's murder, that the defendant revisited Jamie's body, the site where they had buried him. That this defendant dug his body up, removed his clothes, his shoes, his socks, his pants, his underwear, his shirt, took those items, traveled to the home of another codefendant, Robert Worth, and as Robert Worth and Cassandra War[d] watched, burned Jamie's clothes, burned their clothes, for the purpose of destroying evidence. It is further contended by the State that this defendant instructed the codefendant, Cassandra Ward, to dispose of the weapon and the digging in -- implements. The digging implements were discarded behind a dumpster behind a place known as "Rudy's Bar-B-Q" over in Spring, Texas. The gun was given to an unknown individual, those arrangements having been set up by the defendant, Jose Ayala. The digging implements were later recovered by the Sheriff's Office here in Vernon Parish. The State could -- believes that it could further show that this defendant bragged to another codefendant, Robert Worth, that, "Yes, I shot Jamie Stephens. It was the sloppiest murder I ever done." The State would submit this factual recitation along with all of the answers to discovery and the entire suit and file into evidence in support of the charges of second degree murder and the charge of obstruction of justice.

2

On June 29, 2017, the district court reviewed a pre-sentence investigation, reviewed letters, and heard from witnesses, before sentencing Defendant to forty years each for manslaughter and obstruction of justice. The sentences were ordered to run consecutively. Defendant filed a written Motion to Reconsider Sentence on July 7, 2017. The trial court denied the motion on July 12.[2]

Defendant now appeals. In his sole assignment of error, Defendant argues that the forty-year sentences imposed for each offense, to be served consecutively, are excessive.

## Errors Patent

In accordance with Louisiana Code of Criminal Procedure Article 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## Opinion

In his sole assignment of error,[3] Defendant argues that his forty-year sentences are excessive. The sentence imposed by the trial court for each of the offenses to which the defendant pled guilty are the maximum sentences. *See* La.R.S. 14:31(B) and La.R.S. 14:130.1(B)(1). The law is well settled concerning the standard of review to be used in excessive sentence claims:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless

---

[2] The Motion to Reconsider Sentence bears both trial court docket numbers. The cases are not consolidated.

[3] Defendant's heading in his brief indicates there are two assignments of error, and the State responds accordingly. However, Defendant presents one argument in brief. To the extent that Defendant's argument as to the assignment of error raises sub-issues, we address them together in the opinion.

imposition of pain and suffering. *State v. Campbell,* 404 So.2d 1205 (La. 1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne,* 99–192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied,* 00–0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook,* 95–2784 (La.5/31/96); 674 So.2d 957, *cert. denied,* 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling,* 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied,* 01-838 (La. 2/1/02), 808 So.2d 331.

Sentences falling within statutory sentencing ranges may still be unconstitutionally excessive if they shock the sense of justice or make no meaningful contribution to acceptable penal goals. Several factors may be considered when reviewing such a sentence for excessiveness:

[A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith,* 99–0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste,* 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook,* 95–2784 (La.5/31/96); 674 So.2d 957, 958.

*State v. Smith,* 02–719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied,* 03–562 (La. 5/30/03), 845 So.2d 1061.

In this case, Defendant pled guilty pursuant to a plea agreement whereby the State amended the originally indicted second degree murder charge to manslaughter. The trial court gave extensive oral reasons for the sentences imposed for the two offenses at issue here.

4

The court first noted that the victim was shot multiple times with a rifle and that Defendant was originally charged with second degree murder, such that the plea agreement allowing Defendant to plead guilty to manslaughter amounted to a substantial benefit in his favor, and that Defendant also benefited by the dismissal of other charges in connection with the plea. The sentencing judge further considered mitigating factors offered by Defendant at the sentencing, including multiple letters submitted by family and friends on his behalf, Defendant's youth, being only 27 years old, and his military service primarily as a military police officer. The court noted, however, that Defendant had been discharged from the U.S. Army after repeatedly being found using or possessing marijuana and had three convictions for marijuana possession. The court also noted Mr. Ayala's attempt to blame his then-girlfriend for the murder and the fact that she was also charged in connection with the case, but eventually concluded that such would not exonerate or excuse Defendant from his involvement in the crime as a principal even if his version were true. Finally, yet significantly, the court considered the lack of remorse shown by Defendant for the results of his actions, as follows:

> What is very interesting to this court as well is I read through all of this stuff and I took the time to do it 'cause I wanted to be fair to Mr. Ayala and see what he had to say. And he often expressed regret for some things that happened, regret. Never did I glean from anything I read from him that he had any kind of remorse for what happened to the victim and the victim's family and the -- the agony they have had to go through. That tells me a lot about him. I think both of them were evil people. People who could end up in something that would result in someone's death and not seek to do the right thing about it. And the consequences are that many, many lives now have been involved and affected for the rest of their lives and it could have been a lot different if common sense and decency had been [] involved in this whole process. We've got a family, including two children -- two small children, who have a family member who was killed brutally and senselessly. They won't see him. They have memories. They have pictures. They have thoughts, but they won't see him. Two children will grow up -- gonna grow up without a father. And from what I understand he was divorced, but he had involvement with his children

5

and they I'm sure have missed him and will miss him as they grow up. Certain milestones, like graduating from school or getting married and walking the child down the aisle, will never be an option. That has been taken away. Growing old and seeing grandchildren, that is taken away[.] Instead, grandparents and other families are gonna have to fill roles they don't wanna fill and shouldn't have to fill for these children. So, there is damage and harm here that is irreparable and eternal and that makes this very, very heinous and serious and requires severity in the punishment.

As I noted, he benefitted significantly from his plea agreement and all of the other things but that's the -- really from a mitigating point of view, there's not a lot that I see here that mitigates anything as it relates to Mr. Ayala. The sentence of the court -- considering all of this -- is as follows: In Number 86,777, Count 1, on the charge of manslaughter, I sentence him to serve 40 years at hard labor with the Louisiana Department of Corrections. In Number 86,777, Count 2, the obstruction of justice, I sentence him to serve 40 years at hard labor. These are the maximums. In 87,354, I order him to serve ten years at hard labor with the Louisiana Department of Corrections. That sentence, by law, shall be served without benefit of probation, parole, or suspension of sentence. The court is gonna [sic] order that all three of these sentences be served consecutive to each other. He is entitled to credit for time served.

*The Manslaughter Sentence*

Defendant pled to a factual scenario more supportive of the original charge of second degree murder than manslaughter. Generally, manslaughter is a homicide that would be murder, but the offense is partially mitigated when the circumstances are sufficient to excite the passion or heat the blood of an average person. La.R.S. 14:31(A)(1). The State, according to the recitation at the sentencing hearing, was prepared to prove that Defendant shot the victim multiple times with a rifle, under circumstances that were insufficient to provoke a murder. Defendant's conduct after the murder reflected a cold, calculated, and callous outlook on the sanctity of life, and a lack of remorse for his actions or the persons harmed thereby. As such, it is clear that Defendant received a substantial benefit by the reduction of the second degree murder charge to manslaughter. He also received the benefit of the dismissal of other charges as part of the plea agreement.

6

Generally, maximum sentences are reserved for the most serious violation of the offense and the worst type of offender. *State v. Russell*, 42,479 (La.App. 2 Cir. 9/26/07), 966 So.2d 154, *writ denied*, 07–2069 (La.3/7/08), 977 So.2d 897. However, "where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense." *State v. Falcon*, 44,829, p. 4 (La.App. 2 Cir. 10/28/09), 26 So.3d 172, 175.

*State v. Herbert*, 12-228, pp. 5-6 (La.App. 3 Cir. 6/13/12), 94 So.3d 916, 920, *writ denied*, 12-1641 (La. 2/8/13), 108 So.3d 78.

Thus, in the context of a maximum-sentence analysis for manslaughter, where the evidence would otherwise support a murder conviction, Defendant can be considered "the worst type of offender."

In *Herbert*, this court considered a similar appeal of a maximum sentence for manslaughter where the initial charge of second degree murder was reduced pursuant to a plea agreement. After a thorough analysis, the forty-year manslaughter sentence was affirmed.

The trial court gave oral reasons when imposing the defendant's sentence, stating that he had taken into account the evidence presented at the hearing and the sentencing guidelines provided by La.Code Crim.P. art. 894.1. In those reasons, the trial court acknowledged that the defendant had "never been involved in this type of activity before." However, the trial court disagreed with the defendant's contention that Mr. Malin's death was an accident, finding that the beating administered by the defendant and Mr. Sam was "severe, it was deliberate" and that the defendant was trying to minimize his culpability for the crime. Additionally, a certified criminal history was available to the trial court, which indicated that the defendant had a prior misdemeanor conviction.

Further, in addition to the evidence submitted at the plea and sentencing hearings, the record indicates that trial court ruled on several pre-trial evidentiary issues and was privy to DVD interviews, police reports and grand jury testimony. A trial court may rely on varied sources of information and "may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrest as well as conviction records." *State v. Myles*, 94-217, p. 2 (La.6/3/94), 638 So.2d 218, 219.

7

A review of comparable cases indicates that maximum or near-maximum sentences for manslaughter have been upheld on a number of occasions. In *State v. Bowman*, 95-667 (La.App. 4 Cir. 7/10/96), 677 So.2d 1094, *writ denied*, 96-2070 (La.1/31/97), 687 So.2d 400, the defendant was sixteen at the time of the offense and a first offender. The defendant was driving and one of his friends was "fussing" with a pedestrian. The defendant acquiesced to the friend's request that he turn the car around and drive back towards the pedestrian. The friend then shot and killed the pedestrian; the defendant contended that he did not know the friend intended to do so. The defendant was charged with second degree murder, but a jury returned the lesser verdict of manslaughter. After a hearing, the trial court imposed a sentence of thirty-three years at hard labor. The fourth circuit affirmed, finding that the trial court adequately considered the sentencing guidelines and that the sentence was not excessive.

In *State v. Sarkozy*, 99-386 (La.App. 4 Cir. 1/26/00), 755 So.2d 345, the State alleged that the defendant beat the victim to death with a hammer after the victim refused to loan him a quarter. The defendant was charged with second degree murder; however, a jury found him guilty of the lesser charge of manslaughter. The trial court imposed the maximum sentence even though the defendant was a first offender. The trial court found that the crime was deliberately cruel, that the defendant was not acting in self-defense, and that he showed no remorse. On appeal, the fourth circuit found that the sentence was not constitutionally excessive. *See also Falcon*, 26 So.3d 172; *State v. Black*, 28,100 (La.App. 2 Cir. 2/28/96), 669 So.2d 667, *writ denied*, 96-836 (La.9/20/96), 679 So.2d 430.

Based on our review of the record, we find that the trial court did not abuse its broad sentencing discretion in imposing the maximum sentence. The trial court found that the defendant committed an act of actual violence and that the beating received by the victim was severe and deliberate. Further, the trial court found that the defendant tried to minimize his culpability for the crime. Although the defendant is a first felony offender, he received a significant benefit by pleading guilty to manslaughter instead of second degree murder. Further, our review of similar cases indicates that courts have upheld maximum or near-maximum sentences for cases for manslaughter in circumstances similar to those of the defendant.

*Id.* at 920-22.

With respect to Defendant's forty year sentence for manslaughter, the jurisprudence reflects that the maximum penalty has also been imposed in other similar circumstances.

8

In *State v. Bailey*, 07–130 (La.App. 3 Cir. 10/3/07), 968 So.2d 247, the victim was shot multiple times with three different weapons by three different co-defendants. The defendants fled the scene after gathering the clothes and weapons for disposal. Bailey pled guilty to manslaughter and was sentenced to forty years at hard labor. This court affirmed the sentence on appeal.

In *State v. Williams*, 03–1537 (La.App. 3 Cir. 6/9/04), 875 So.2d 1043, *writ denied*, 04–1951 (La. 12/17/04), 888 So.2d 864, the defendant pled guilty to manslaughter and was sentenced to forty years at hard labor. The facts showed that the defendant and the victim had an ongoing dispute. On the date of the crime, the victim and the defendant had yet another confrontation wherein the defendant shot the victim with a twelve–gauge shotgun at point blank range. On appeal, this court affirmed the defendant's sentence.

In the instant case, the trial court gave extensive reasons for the sentence imposed and thoroughly considered, as required by La.Code Crim.P. art. 894.1, the background of Defendant, the circumstances surrounding the crimes committed, the benefit received by Defendant from the reduction of the second degree murder charge to manslaughter and other related factors, including the impact of the murder on the victim's family. Considering this, we do not find that the maximum sentence imposed for manslaughter was excessive.

*The Obstruction of Justice Sentence*

We next consider whether the maximum sentence imposed for the conviction for obstruction of justice is excessive. The court sentenced Ayala to forty years for obstruction of a murder investigation under La.R.S. 14:130.1(B)(1) instead of twenty years under (B)(2) as per the terms of the plea agreement. The court read Mr. Ayala the language of the obstruction-of-justice statute, La.R.S. 14:130.1, and ascertained

9

that he understood what he was pleading to under Count 2, i.e., "[t]ampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding." On Count 1, Mr. Ayala had pled down from second-degree murder to the lesser offense of manslaughter. However, on Count 2, on the recommendation of his lawyers, Mr. Ayala pled guilty, as originally charged, to obstruction of a murder investigation under La.R.S. 14:130.1(B)(1).[4] The court at the time of the plea and at the time of sentencing confirmed that Mr. Ayala understood the maximum to which he would be exposed:

BY THE COURT:

Alright, Mr. Ayala, you're pleading in 86,777, Count 1, to the offense of manslaughter. Is that correct, sir?

BY THE DEFENDANT (MR. AYALA):

That's correct, Judge.

BY THE COURT:

And then in Count 2, you're pleading to the charge of obstruction of justice and that's as charged. And the reason I say that, the obstruction of justice reads, obstruction of justice in conjunction with the charge of – or the offense of second degree murder.

BY MR. SEASTRUNK:

That's correct.

---

[4] The applicable statute, at the time of the 2014 offense, and the current 2016 version, both state in pertinent part as follows:

B. Whoever commits the crime of obstruction of justice shall be subject to the following penalties:

(1) When the obstruction of justice involves a criminal proceeding in which a sentence of death or life imprisonment may be imposed, the offender shall be fined not more than one hundred thousand dollars, imprisoned for not more than forty years at hard labor, or both.

(2) When the obstruction of justice involves a criminal proceeding in which a sentence of imprisonment necessarily at hard labor for any period less than a life sentence may be imposed, the offender may be fined not more than fifty thousand dollars, or imprisoned for not more than twenty years at hard labor, or both.

La.R.S. 14:130.1.

10

BY THE COURT:

And that -- there's a difference in the sentencing provisions there, right?

BY MS. NELSON:

That's correct, Your Honor.

BY THE COURT:

You understand that?

BY THE DEFENDANT (MR. AYALA):

I do.

BY THE COURT:

And that's what you're pleading to?

BY THE DEFENDANT (MR. AYALA):

Yes, Your Honor.

And again at sentencing, this colloquy followed:

[Court]. All right, sir. Now, the sentencing provision for that offense is under part B(1) of that article and that is, when the obstruction of justice involves a criminal proceeding in which a sentence of death or life imprisonment may be imposed. Now, that's the one that deals with the second degree. You're -- you're pleading to the obstruction in the investigation of the second degree murder and that would have carried a . . . life imprisonment sentence. You understand?

A.     I understand.

[Court]. And, so, that's why B(1) is the one I'm reading. The offender shall be fined not more than one hundred thousand dollars, imprisoned for not more than forty years at hard labor, or both. That's your maximum, do you understand?

A.     I understand.

The trial court individually considered this offense when imposing sentence and stated as follows:

On the obstruction of justice, Count 2, . . . he and two others buried the body of the victim in a shallow grave in a wooded area and

11

then, subsequently, went back to the location where the shooting occurred, washed the site down the best they could with bleach and water, and then at some point they removed everything from the victim's body, after they went back to the grave, including material they used to wrap and transport the body and burned much of that, if not all of it, in an effort to conceal whatever evidence that may contain. And, thus, that is clearly the obstruction of justice.

The evidence recited to the court in support of the guilty plea to the obstruction of justice count was that immediately after shooting the victim multiple times, Defendant retrieved a blanket to cover the victim's body. He then enlisted the aid of other co-defendants to load the victim James Stephens's body into the back of a car to transport him to a location on Highway 1211 in Vernon Parish, Louisiana where they dug a shallow grave and buried him. Later, Defendant and his henchmen traveled back to the scene of the murder, where he, along with co-defendant Cassandra Ward, used a water hose and bleach to destroy the evidence of the crime. That was not the end of the story, however. Within the week after the murder, Defendant revisited the victim's makeshift grave, dug his body up, removed all of the clothes he was wearing when he was murdered, taking those items to the home of another co-defendant, Robert Worth. As Worth and Cassandra Ward watched, Defendant then burned the victim's clothes to further destroy evidence of the murder. Defendant instructed co-defendant Cassandra Ward to dispose of the weapon and the shovels used to bury the victim. The digging implements were discarded behind a dumpster at the back of a business in Spring, Texas in yet another effort to hide the evidence of the murder and its coverup. Finally, the gun used to murder the victim was given to an unknown individual, through arrangements set up by Defendant, Jose Ayala, III. The efforts of Defendant to conceal the murder resulted in an extensive, time consuming investigation by Vernon Parish Sheriff's Department personnel, with the aid of other law enforcement agencies and private

12

search groups. It was not until three months after the murder that the case was finally solved, and the body of James Stephens was found buried in his shallow grave.

In *State v. Roberson*, 40,809 (La.App. 2 Cir. 4/19/06), 929 So.2d 789, the court found a maximum sentence of forty years for obstruction of justice also involving a murder was not excessive. There, the defendant was convicted of second degree murder in addition to obstruction of justice. The body of the victim had been found about thirty miles away from the site of the murder, and DNA evidence was found in the trunk of a vehicle driven by the defendant. Inferring that the defendant intentionally tampered with evidence relevant to the murder investigation, the second circuit affirmed the forty year maximum sentence finding that it was not excessive.

In *State v. McKnight*, 98-1790 (La.App. 1 Cir. 6/25/99), 739 So.2d 343, *writ denied*, 99-2226 (La. 2/25/00), 755 So.2d 247, the defendant was charged with obstruction of justice in connection with disposing of the body of a twenty-two-month-old child that the defendant had been babysitting. Evidence adduced at trial established that the defendant threw the child from a car on a bridge into the water below after the child had suffered blunt force trauma to the head rendering him unconscious. According to medical testimony, the child may have still been alive when thrown into the water. After having been found guilty of obstruction of justice, the defendant was sentenced to the maximum forty years in prison at hard labor. In affirming the sentence, the first circuit stated as follows:

> We acknowledge defendant's status as a first felony offender. However, as noted by the trial judge, this crime involved a heinous offense, particularly in light of the fact that the child's parents, law enforcement officials and the community continued to search for the child and they continued to hope for a successful reunion. Additionally, the longer the child's body remained in the river, the more it decomposed and deteriorated, a fact which was very traumatic to the parents. Thus, we conclude that this case involved the most serious

13

violation of obstruction of justice and that defendant represents the worst kind of offender. We do not find the sentence imposed herein to be so grossly disproportionate as to shock our sense of justice. Accordingly, the sentence imposed is not excessive.

*Id.* at 359-60.

We find Defendant's brazen conduct in this case far exceeds that of the defendant in *Robertson,* 929 So.2d 789. Indeed, we find the facts here to be more akin to those in *State v. McKnight,* 739 So.2d 343. Here, Defendant went to great lengths to destroy evidence of the murder and conceal his criminal act from law enforcement officials. His actions further kept the victim's family in a state of limbo, not knowing the whereabouts or the welfare of their loved one. In addition, Defendant not only engaged in this crime to hide evidence on his own, but also enlisted the assistance of, and involved, others who also now face charges. The sentence imposed is not such as to shock the conscience and certainly is within the broad sentencing discretion of the trial court.

*Consecutive Sentences*

Finally, we must consider whether the trial court's imposition of the two forty year sentences as consecutive sentences in this instance amounts to an excessive sentence. Louisiana Code of Criminal Procedure article 883 provides that on conviction "of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively" and that "[o]ther sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently."

Although the trial court has this discretion statutorily there is a constitutional limitation that sentences, whether consecutive or concurrent, not be excessive. In determining whether sentences are

14

excessive we should consider, among other factors, whether convictions arise out of a single course of criminal conduct. The general preference for concurrent rather than consecutive sentences was recognized by this Court in *State v. Underwood*, 353 So.2d 1013, 1019 (La. 1977), in which we observed that "(b)ased on the American theory and practice, concurrent rather than consecutive sentences are the usual rule, at least for a defendant without previous criminal record and in the absence of a showing that the public safety requires a longer sentence."

This Court, however, has never held that if convictions arise out of a single course of illegal conduct, consecutive sentences will necessarily be found to be excessive. Other factors must be considered.

*State v. Ortego*, 382 So.2d 921, 923 (La.1980).

In *State v. Roberson*, 929 So.2d 789, the court considered a similar claim where the defendant was convicted of second degree murder and obstruction of justice and was sentenced to life in prison on the murder charge and the maximum forty years in prison on the obstruction charge.

Finally, Roberson also argues that the trial court erred in ordering his sentences be served consecutively. When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. *State v. Robinson*, 33,921 (La.App.2d Cir.11/01/00), 770 So.2d 868. Here, considering the heinous nature of the crime against Smith, along with the anguish it caused her family, including children, we believe the record provides an adequate factual basis to support consecutive sentences. The trial court did not err in this regard.

*Id.* at 805.

In *State v. Gay*, 36,357 (La.App. 2 Cir. 10/23/02), 830 So.2d 356, the court considered maximum sentences imposed for armed robbery and attempted second degree murder of ninety-nine years and fifty years respectively, to be served consecutively and without benefits.

The record also supports the trial court's imposition of consecutive sentences. Concurrent sentences arising out of a single course of conduct are not mandatory. *State v. Pickett*, 628 So.2d 1333 (La.App. 2d Cir.1993), *writ denied*, 94-0348 (La.05/20/94), 637 So.2d

15

476; *State v. Nelson,* 467 So.2d 1159 (La.App. 2d Cir.1985). Nor are consecutive sentences under those circumstances necessarily excessive. *Ortego, supra; State v. Williams,* 445 So.2d 1171 (La.1984); *State v. Mills,* 505 So.2d 933 (La.App. 2d Cir.), *writ denied,* 508 So.2d 65 (La.1987). In imposing the chosen sentence, the trial court noted the victim's age, Gay's lack of remorse and the victim's impact statement which indicated that the victim is required to take medication since this incident and that for quite some time was afraid to leave her home. Additionally, the court was obviously impressed by the nature and viciousness of the attack and Gay's disregard for the life and property of others. We find these factors more than adequate to justify the imposition of consecutive sentences in this case and amply reflect the court's reasons for the consecutive terms.

*Id.* at 367-368.

In this case, the trial court adequately and correctly considered Defendant's age, background, mitigating evidence submitted on Defendant's behalf, as well as the heinous nature of the offense, the lack of remorse shown by Defendant, the extensive steps taken to hide the crime, the effect of the crimes on the family and children of the victim, and the benefits received by Defendant as a result of the plea agreement. Thus, we find that the consecutive forty year sentences for manslaughter and for obstruction of justice imposed in this case are not constitutionally excessive.

## Decree

For the reasons herein set forth, Defendant's sentences are affirmed.

**AFFIRMED.**