**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**25-623**



**STATE OF LOUISIANA**

**VERSUS**

**MARLON LEE VALLIAN**



**\*\*\*\*\*\*\*\*\*\***

**APPEAL FROM THE**
**SIXTEENTH JUDICIAL DISTRICT COURT**
**PARISH OF IBERIA, NUMBER 2020-CR-140**
**HONORABLE VINCENT J. BORNE, DISTRICT JUDGE**

**\*\*\*\*\*\*\*\*\*\***

**SHARON DARVILLE WILSON**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sharon Darville Wilson, Gary J. Ortego and Clayton Davis, Judges.



**AFFIRMED.**

**Richard A. Spears**
**ATTORNEY AT LAW**
**101 Taylor Street**
**New Iberia, Louisiana 70560**
**(337) 367-1960**
**COUNSEL FOR APPELLANT:**
    **Marlon Lee Vallian**

**M. Michael Haik, III, District Attorney**
**Lauren M. Hue, Assistant District Attorney**
**W. Claire Howington, Assistant District Attorney**
**16TH JUDICIAL DISTRICT ATTORNEY'S OFFICE**
**300 Iberia Street, Suite 200**
**New Iberia, Louisiana 70560**
**(337) 369-4420**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**WILSON, Judge.**

Defendant, Marlon Lee Vallian, pled guilty to manslaughter, a violation of La.R.S. 14:31. The trial court sentenced Mr. Vallian to the maximum sentence of forty years at hard labor. Mr. Vallian now appeals. For the following reasons, we affirm the conviction and sentence.

I.

**ISSUES**

Mr. Vallian asserts the following assignments of error:

(1)　the forty-year maximum sentence for manslaughter is constitutionally excessive as applied;

(2)　the district court failed to adequately individualize the sentence and overemphasized aggravation while underweighting mitigation; and

(3)　the district court's reasons reflect insufficient consideration of the open plea context and the State's agreement not to multiple bill.

II.

**FACTS AND PROCEDURAL HISTORY**

On October 11, 2019, the Iberia Parish Sheriff's Office responded to a call for an unresponsive female. Upon arrival, a female victim, Antonia D. August, was discovered deceased. It was determined that she had suffered extensive and serious injuries including evidence of blunt force trauma to the head and abdomen. In addition to the blunt force trauma to the head causing brain bleeds, the autopsy revealed the victim suffered a fracture in the area of her neck, bleeding in her throat, a broken hyoid bone, petechiae in her eyes, three broken ribs, a lacerated spine, lacerated spleen, lacerated bowels, anal tearing with bleeding, and drag-related abrasions.

During police interviews, Mr. Vallian stated the victim had overdosed and

altered his version of what occurred several times. However, the investigation showed that Mr. Vallian and Ms. August, who were in a relationship at the time, engaged in a verbal altercation that led to Mr. Vallian beating and strangling Ms. August to death.

Mr. Vallian was indicted for one count of second degree murder, a violation of La.R.S. 14:30.1 and one count of obstruction of justice by tampering with evidence, a violation of La.R.S. 14:130.1(A)(1). Mr. Vallian initially pled not guilty. On July 15, 2022, in exchange for an amended charge, dismissal of ancillary charges, and the State's agreement not to multiple bill, Mr. Vallian chose to enter an open-ended plea agreement in which he pled guilty to manslaughter. On October 24, 2022, after consideration of the evidence produced and hearing witness testimony both for and against Mr. Vallian, the court sentenced Mr. Vallian to the maximum sentence of forty years at hard labor.

On November 18, 2024, Mr. Vallian filed an application for post-conviction relief seeking an out-of-time appeal. The out of time appeal was granted by the trial court on July 21, 2025. The appeal was lodged with this court on October 22, 2025.

III.

## LAW AND DISCUSSION

### ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

### ASSIGNMENTS OF ERROR

In his first assignment of error, Mr. Vallian contends the forty-year maximum sentence imposed on him is constitutionally excessive. Following his sentencing,

Mr. Vallian failed to file a motion or to object to his sentence with specific reasons at the sentencing hearing.

Louisiana Code of Criminal Procedure Article 881.1 provides:

> A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
>
> . . . .
>
> B. The motion shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based.
>
> . . . .
>
> E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

Given that Mr. Vallian failed to comply with La.Code Crim.P.art. 881.1, our review is restricted to a bare claim of excessiveness. *State v. Hargrave*, 05-1027 (La.App. 3 Cir. 3/1/06), 926 So.2d 41, *writ denied*, 06-1233 (La. 11/22/06), 942 So.2d 552.

In his second assignment of error, Mr. Vallian asserts that the district court failed to individualize the sentence and overemphasized aggravating factors while not giving enough weight to mitigating factors. Finally, in his third assignment of error, Mr. Vallian argues that the district court's reasons reflect insufficient consideration of the open plea context and the State's agreement not to multiple bill. These are issues that are not addressed in a bare excessiveness review. Because Mr. Vallian failed to orally object at the sentencing hearing or file a timely motion to reconsider sentence, he has waived his right to appeal these issues, and his first assignment will be reviewed as a bare claim of excessiveness.

Louisiana courts have laid out the following guidelines regarding excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
>> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, writ denied, 00-0165 (La.6/30/00)00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
>
> Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La.6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061, a panel of this court observed that:
>
>> While a comparison of sentences imposed for similar crimes may provide some insight, "it

is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996)].

*State v. Soileau*, 13-770, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-0452 (La. 9/26/14), 149 So.3d 261.

Furthermore, this court adopted the fifth circuit's three-factor test from *Lisotta* in *State v. Baker*, 06-1218 (La.App. 3 Cir. 4/18/07), 956 So.2d 83, *writ denied*, 07-320 (La. 11/9/07), 967 So.2d 496, and *writ denied*, 07-1116 (La. 12/7/07), 969 So.2d 626.

Under *Baker*, the first consideration is the nature of the crime. Mr. Vallian pled guilty to manslaughter, a violation of La.R.S. 14:31, which is defined as:

A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]

This case clearly involves a crime of violence. At the sentencing hearing, the trial court noted that it had taken into consideration a vast amount of forensic evidence including the pathology and toxicology reports, crime scene photographs, a diagram of the victim's injuries, as well as the police report with initial interviews, victim impact statements, and witness testimony.

The investigative report by Detective Misty Montgomery showed that Deputy Jarred Spurlock was dispatched to a medical complaint on October 11, 2019. When

he reported to the scene, he observed Mr. Vallian along with his uncle and his father in the living room. Deputy Spurlock was shown to the bedroom where he observed the victim, Ms. August, lying naked on the floor covered by a bed sheet. He noted multiple marks and injuries on her entire body, including stab or cut marks to her chest, shoulders, and arms as well as what appeared to be dried blood from a lip injury, and an injury to her right eye socket.

Firefighter Kassidy Scott informed Deputy Spurlock that they were told Ms. August had a history of overdosing and had overdosed on medication and alcohol. Firefighter Scott showed Deputy Spurlock a bottle of bills which had been filled three days earlier with thirty tablets, but only six tablets were remaining. Damage to the walls and decorations indicated a struggle had taken place. Blood was observed in the hall bathroom sink and water dripping in the bathtub, indicating someone had recently showered. Detectives also observed clothing in the washing machine sitting in water and what appeared to be blood on the machine lid. A white powdery substance was found in the toilet and determined to have traces of the medication found near the victim's body. Also, multiple items with blood were found hidden in various areas of the residence, concealed from plain view, along with blood splatter in multiple areas.

Mr. Vallian's statements and timeline regarding what happened changed drastically several times during police interviews and conflicted with that of other witnesses. All of his statements blamed the victim, claiming the wounds were self-inflicted and that she died of suicide by overdosing because she was mad at Mr. Vallian for cheating. Mr. Vallian admitted he cleaned the scene, moved the victim's clothing to a hall closet along with a broken lamp, and placed the other broken items in the bedroom closet next to where she was lying.

Detective Montgomery offered the following testimony at the sentencing hearing regarding the injuries the autopsy revealed Ms. August had suffered:

Q.  Can you go over the injuries that Antonia August received?

A.  Yes.

Q.  And what injuries were noted at that autopsy?

A.  There was blunt force trauma to the head and neck. Multiple blunt force traumas to the head and neck, with a brain bleed. She had a fracture to her spine, one of her neck vertebras. The hyoid bone which is also in your neck was broken. She had petechiae in her eyes. She had three fractured ribs on the left-hand side. There was blunt force trauma to her abdomen with a lacerated liver, a lacerated spleen and a lacerated bowel. She also had anal tearing with bleeding and rug burns -- what the doctor called them rug burns on her back from being drug.

When questioned in regard to the detective's conversation with the autopsy physician as to whether any of these injuries could have been due to an accident or self-inflicted, Detective Montgomery testified:

A.  . . . She said there's absolutely no way that these injuries were self-inflicted.

The second *Baker* factor is the nature and background of the defendant. The record reflects that at the time of the crime, Mr. Vallian was a forty-two year old male living with his father and uncle. During the plea proceeding, he stated that he worked part-time jobs as a laborer and had a ninth-grade education.

Mr. Vallian and Ms. August were described as having been in a tumultuous relationship for approximately ten years. During a police interview, one of Ms. August's friends, Tara Keal, stated that she had seen Mr. Vallian be physically abusive to Ms. August in the past, slapping, and punching her with a closed fist. She stated that there had been an incident where Ms. August told her that Mr. Vallian had caused her to be hospitalized with a collapsed lung by punching her after they got into an argument.

7

Detectives also interviewed Ms. August's adult daughter, Alexandria. She stated that the last time she spoke with her mother was one to two days before her death. She could not recall the entire phone number she spoke to her on because her mother had several phones due to Mr. Vallian always taking them away. When Alexandria was unable to reach her mother, she called her sister in Abbeville who said that Mr. Vallian had come to her home and shoved Ms. August into his car. Alexandria stated that her mother was in the process of getting her life back together, regaining custody of her younger children and moving back to Abbeville. Alexandria stated her mother had been staying in Abbeville for about a month prior to her death. She also stated that Ms. August had told her she could not handle getting her kids back and trying to satisfy Mr. Vallian. She had to take care of Mr. Vallian, his father and his uncle, while Mr. Vallian would block Ms. August's family members from her phone and social media. Alexandria stated she had seen Mr. Vallian shove her mother and punch her in the mouth with a closed fist. She stated her mother mostly tried to hide the abuse but had told her Mr. Vallian would pull her hair, choke her, and rip her clothes off.

The record shows that Mr. Vallian was controlling of the victim and both mentally and physically abusive. Mr. Vallian had three prior convictions for simple burglary, as well has three convictions for crimes of violence. Two of the convictions for crimes of violence were against women—one against an ex-wife and the other against the victim in this case. He was arrested for domestic abuse battery and simple assault against Ms. August but pled down to simple battery.

At the sentencing hearing, Defense counsel called Reverand Carol Crawford who testified that she knew Mr. Vallian's family members but only had the opportunity to meet Mr. Vallian after he was incarcerated. She stated that Mr. Vallian came from a good, loving, and Christian home. She believed his family

would help him if he were to get out of jail, and she too would be willing to mentor him. She also testified that Mr. Vallian was remorseful but admitted she did not know of his prior criminal convictions.

Mr. Vallian's sister, Lisa Arcenaux, was also called. She testified that due to the age difference, she was more like a second mom to her brother. She stated that she was close to Mr. Vallian and Ms. August and loved her like a sister. She stated Mr. Vallian and Ms. August had a relationship that was sometimes good, sometimes rocky and that both had issues. She further testified that Mr. Vallian was diagnosed with ADHD and as bipolar. Ms. Arcenaux stated that Mr. Vallian became detached after their brother was killed in an accident twenty-nine years ago. She stated that Mr. Vallian also suffered from mental issues that stemmed from a medical incident which occurred four years prior when a passerby found him collapsed on the side of the road. He was airlifted, placed on a ventilator and almost died. She said he suffered from memory, speech, and concentration issues because of that. Ms. Arcenaux further testified that Ms. August also suffered from mental issues, sharing the same mental health counselor as Mr. Vallian.

Mr. Vallian's cousin, Roxanne Smothers, also testified that she had known him for over twenty years. She testified that she never saw any violence in the relationship and did not know Mr. Vallian to be a violent person. However, on cross examination, Ms. Smothers admitted she had no knowledge of Mr. Vallian's conviction for simple battery on Ms. August in 2015, or his other battery convictions.

The final *Baker* factor is a comparison of sentences imposed for similar offenses. A manslaughter conviction carries a penalty of imprisonment at hard labor for not more than forty years. La.R.S. 14:31(B). Mr. Vallian was sentenced to the maximum of forty years with credit given for time served. The Louisiana Supreme Court has stated,

> [S]entences at or near the maximum should ordinarily apply only to the most blameworthy offenders committing the most serious violations of the described offense. While comparisons with other similar cases "is useful in itself and sets the stage," *Telsee*, 425 So.2d at 1254, the focus of sentence review remains on the character and propensities of the offender and the circumstances of the offense. *Id.*

*State v. LeBlanc*, 09-1355, p.10 (La. 7/6/10), 41 So.3d 1168, 1173.

This court, as well as other courts of appeal and the Louisiana Supreme Court have upheld maximum sentences in similar cases. In *State v. Ayala*, 17-1041 (La.App. 3 Cir. 4/18/18), 243 So.3d 681, the defendant was charged with second degree murder but pled guilty to manslaughter and received the maximum sentence. This court upheld that sentence stating:

> Defendant pled to a factual scenario more supportive of the original charge of second degree murder than manslaughter. Generally, manslaughter is a homicide that would be murder, but the offense is partially mitigated when the circumstances are sufficient to excite the passion or heat the blood of an average person. La.R.S. 14:31(A)(1). The State, according to the recitation at the sentencing hearing, was prepared to prove that Defendant shot the victim multiple times with a rifle, under circumstances that were insufficient to provoke a murder. Defendant's conduct after the murder reflected a cold, calculated, and callous outlook on the sanctity of life, and a lack of remorse for his actions or the persons harmed thereby. As such, it is clear that Defendant received a substantial benefit by the reduction of the second degree murder charge to manslaughter. He also received the benefit of the dismissal of other charges as part of the plea agreement.

*Id.* at 687

The court further clarified that "in the context of a maximum-sentence analysis for manslaughter, where the evidence would otherwise support a murder conviction, Defendant can be considered 'the worst type of offender.'" *Id.* at 687–88.

In *State v. Reder*, *19*-373 (La.App. 3 Cir. 12/18/19), 286 So.3d 644, *writ denied*, 20-216 (La. 7/24/20), 299 So.3d 74, a twenty-five-year-old defendant was charged with second degree murder but pled guilty to manslaughter. This court again upheld a forty-year maximum sentence. Like the case at hand, the defendant

initially claimed his wife had died of an overdose and changed his story multiple times.  Later, the defendant admitted he and his wife had been in an argument that resulted in him strangling her until she died.  The trial court took many factors into consideration, including the defendant's age and background before sentencing him to the maximum allowed.

In *State v. Ponthieux*, 20-317 (La.App. 3 Cir. 5/5/21), 319 So.3d 460, this court upheld a forty-year sentence imposed on a sixty-two-year-old, first-time-felony offender.  Similar to the case at hand, the defendant there was charged with second degree murder but pled guilty to manslaughter.  The defendant's counsel pointed out mitigating factors in the sentencing memorandum including the defendant's age and the fact that the defendant had ongoing medical issues, a history of seizures, and a prior brain injury.  However, this court affirmed that sentence, stating:

> Defendant was initially charged with second degree murder of Patterson after an argument between the two resulted in Defendant wrapping a towel around the victim's neck and choking her, ultimately leading to her death. The evidence could have supported a second-degree murder conviction. As has been previously noted, the pertinent question on appeal is whether the trial court abused its great discretion at sentencing. Given the cases discussed above and the facts of this case, we cannot say the trial court abused its discretion in imposing a maximum sentence.

*Id.* at 466.

In *State v. Little*, 52,131 (La.App. 2 Cir. 8/15/18), 252 So.3d 1038, 1042, *writ denied*, 18-1582 (La. 3/25/19), 267 So.3d 594, the second circuit also upheld a maximum manslaughter sentence.  There the defendant had been charged with second degree murder for shooting a man in the head twice and subsequently pled guilty to manslaughter.  The court there noted that "the [trial] court concluded that Little received 'a very substantial reduction' in sentencing exposure, from [a] life term to a maximum of 40 years." *Id.* at 1042.

11

Finally, in *State v. Lewis*, 09-1404 (La. 10/22/10), 48 So.3d 1073, the supreme court reversed an appellate decision that found the sentence of thirty years at hard labor excessive for the sixteen-year-old defendant who had been tried as an adult. The defendant in *Lewis* shot an eighteen-year-old male in the head after a fight broke out. Defendant denied it was on purpose, claiming the gun had fallen out of another boy's pocket, he picked it up to ensure no one got hurt, then it accidentally discharged. *Id.* at 1075. However, the supreme court stated, "his claim for what happened next, which he repeated at sentencing, that the gun fired accidentally after he scooped it off the ground, defied the weight of the evidence presented at trial, not only by the eyewitnesses on the scene but also by the state's experts[.]" *Id.* at 1079.

The court further held:

> By returning the lesser verdict of manslaughter even against the weight of the evidence that defendant committed a second degree murder, and thereby taking into account that the 16–year–old brain does not work in the same manner as an adult brain, which would presumably grasp the folly of embarking on lethal conflict over a one dollar cigar, the trial court had already accorded full weight to the mitigating circumstance of defendant's youth when it then turned to the matter of sentence.

*Id.*

At the sentencing hearing in the instant case, the trial court judge stated the following:

> [W]e're here to determine what's the just sentence based upon the totality of the circumstances. And we can't lose sight that someone has been killed. There's two people that knows [sic] -- apparently from what I reviewed, two people that know what happened and one of them is deceased. And there has been some allusion to some of Antonia's family and friends that she was a forgiving person. She seemed like a good person. I didn't know her, but you can't get a benefit in a situation that Mr. Vallian is in because the person who is no longer here was a forgiving person. There's a consequence for someone's actions. There has to be a just result given the totality of the circumstances.
>
> And everything else that happened in a vacuum, you do look at someone's record. Mr. Vallian is a fourth offender and he has all these

crimes against domestic type situations that are misdemeanors that leads [sic] up to this circumstance.

Nothing I'm going to do is going to bring any -- give any comfort to the family and to the friends of Antonia. Hopefully you can move forward after this proceeding is concluded. But what the Court has looked at is the criminal history, the circumstances. And I recognize at the time of his plea, Mr. Vallian admitted to the following facts: That he committed an intentional misdemeanor directly affecting a person which is a battery. He admitted he struck or committed a battery on the victim. And that she died without the intent to kill. Therefore, he's exposed not to a life sentence, but to a sentence between -- up to 40 years. And the state has agreed not to multi-bill him or treat him as a habitual offender although they agreed they would argue that at the sentencing which is done. So there is a substantial benefit that he's received for not being a mandatory life-sentence case if he was convicted of second degree murder to [sic] today. But what I think a lot of the folks here didn't review which I did was the statements that Mr. Vallian gave at the time where he, essentially, gives a version of events that he seems to say Antonia had some sort of overdose which didn't jive with the evidence that was presented by law enforcement. The forensic pathologist, Ms. Charrier has pointed out that this was a horrible crime committed by someone who used blunt-force trauma. It wasn't an accident. It wasn't inflicted by Antonia. So it's a serious offense. There was a significant benefit for the sentencing range, but given some of the facts of Mr. Vallian's criminal history, the circumstances of the incident nearly three years ago that occurred . . . .

But sitting where I'm from knowing the circumstances, having reviewed the toxicology, the forensic pathology, the injuries that Ms. Antonia received prior to dying from blunt-force trauma, I must say that this particular crime was significant. And based upon the totality of the circumstances, I think a sentence less than the one I'm about to impose would deprecate the seriousness of the offense and I do think that given this circumstance with regards to Mr. Vallian's criminal history, the prior domestic violence against the victim and others, the fact that this was a domestic violence case and the fact that although he accepted responsibility by pleading guilty, his initial statement as well as the theory under which he pled does not coincide with the surmountable amount of forensic evidence that shows this was done by blunt-force trauma, broken ribs, broken cervical, brain bleed and all those things that are detailed, the pictures, all of that. So this was a terrible crime. . . .

So based upon the totality of the circumstances, I do find the appropriate sentence in this particular case is 40 years at hard labor and I impose it at this time.

Considering the facts, arguments, as well as the statutory and jurisprudential authorities discussed above, we find that the trial court did not abuse its broad

sentencing discretion in imposing the maximum sentence. The record and severity of the injuries inflicted support the trial court's determination that a lesser sentence would deprecate the seriousness of the offense. Additionally, in light of the guidance provided by relevant precedent, the sentence imposed is not grossly disproportionate to the severity of the crime. Accordingly, Mr. Vallian's first assignment of error lacks merit and the sentence imposed is not excessive.

IV.

## CONCLUSION

For the foregoing reasons, the conviction and sentence of Defendant, Marlon Lee Vallian, are affirmed.

**AFFIRMED.**