STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-228

STATE OF LOUISIANA

VERSUS

THOMAS HERBERT

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 09-1492
HONORABLE PAUL J. deMAHY, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, and
Marc T. Amy, Judges.

AFFIRMED.

Thibodeaux, Chief Judge, dissents with written reasons.


J. Phillip Haney
District Attorney
300 Iberia Street, Suite 200
New Iberia, LA   70560
(337) 369-4420
COUNSEL FOR APPELLEE:
        State of Louisiana

Angela B. Odinet
Assistant District Attorney
307 Church Street
St. Martinville, LA   70582
(337) 394-2220
COUNSEL FOR APPELLEE:
        State of Louisiana

**Edward K. Bauman**
**Louisiana Appellate Project**
**Post Office Box 1641**
**Lake Charles, LA   70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Thomas Herbert**

**AMY, Judge.**

The defendant was charged with second degree murder, a violation of La.R.S. 14:30.1. As part of a plea agreement with the State, the defendant pled guilty to manslaughter, a violation of La.R.S. 14:31. After a hearing, the trial court sentenced the defendant to forty years at hard labor. The defendant now appeals, contending that his sentence is excessive. For the following reasons, we affirm.

## Factual and Procedural Background

In connection with the death of Joseph Adam Malin, the State charged the defendant, Thomas Blake Herbert,[1] with second degree murder, a violation of La.R.S. 14:30.1. According to the record, the State contended that the defendant and a friend, Jesa Sam, beat Mr. Malin and that Mr. Malin died from a brain hemorrhage as a result of the attack.

After the trial court determined that certain inculpatory statements made by the defendant were admissible, the defendant entered a plea of guilty to the reduced charge of manslaughter, a violation of La.R.S. 14:31. At that hearing, the State alleged the following factual basis for the conviction:

> Your Honor, with respect to Mr. Herbert, the State would submit that on or about the date alleged in the Bill of Information, a woman by the name of Cheramie Freyou had claimed that she was sexually assaulted by a person by the name of Motley Duhon. Motley Duhon and the victim, Adam [Malin] were friends, and Adam [Malin] was at the residence where and when the alleged sexual assault occurred. Motley Duhon denied assaulting Cheramie Freyou and Adam [Malin] corroborated the lack of any type of sexual assault on Cheramie Freyou. Ms. Freyou, dissatisfied, contacted Mr. Herbert and, Thomas Herbert, and [Jesa] Sam claiming she was sexually assaulted and for Mr. Herbert and Sam to come see about her. After dropping off Cheramie Freyou's sister at her residence, Mr. Herbert and Mr. Sam were following a red van occupied by Cheramie Freyou and other members driving towards Neco Town Road, when they

---

[1] The defendant's last name is spelled "Hebert" in portions of the record. Further, the victim's last name is spelled "Malyn" in portions of the record and Cheramie Freyou's name is spelled as "Shermai" or "Sheramie." Jesa Sam's name is occasionally spelled "Jessa" or "Jesse." We use the spellings contained in the bill of information and the defendant's appellate brief, as appropriate.

came across Mr. [Adam Malin] walking down Deere Street in New Iberia. Cheramie Freyou pointed out Mr. Adam [Malin] and identified him as the person taking up for Mr. Duhon who she claimed had sexually assaulted her. Ms. Freyou told Mr. Herbert and [Jesa] Sam to go "handle up" on Mr. [Malin], which Ms. Freyou described that term to law enforcement in her interrogation as being to beat Mr. Adam [Malin] up.

The State would call witnesses that would testify that they saw Mr. Herbert and Mr. Sam approach Mr. [Malin] and begin striking him in the head multiple times causing him to fall to the ground. Both Mr. Herbert and Mr. Sam fled the scene. Mr. Herbert admitted in his interview to law enforcement officers, after a valid waiver of his Miranda rights, that he struck the victim "two or three times." The victim, Adam [Malin] died as a result of the injuries caused by the defendant and [Jesa] Sam. The fatal injury to Mr. [Malin] was the cause by a blow to the head that resulted in (inaudible) hemorrhaging in the base of the brain causing pressure on the portion of the brain that controls the functioning of both respiration and heart rate resulting in Mr. [Malin]'s death.

The plea agreement indicates that the plea agreement was open-ended and that the trial court would order a certified criminal history.

When he pled guilty, the defendant testified that he was twenty-six years old and had an eighth grade education. At the sentencing hearing, Mr. Malin's mother and uncle testified. Further, several victim impact statements were submitted into the record. The State and the defense jointly submitted a certified criminal history that indicated that the defendant had a misdemeanor conviction for remaining after forbidden from 2003. Additionally, the defendant and several of his family members testified on his behalf. After hearing all of the evidence, the trial court sentenced the defendant to forty years at hard labor, the maximum sentence for manslaughter. La.R.S. 14:31(B). The defendant later filed a motion for reconsideration, which the trial court denied after a hearing.

The defendant now appeals, asserting as his sole assignment of error that his sentence is excessive.

2

**Discussion**

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no such errors.

*Excessive Sentence*

In his sole assignment of error, the defendant contends that the trial court erroneously imposed an excessive sentence.

As part of its review of a sentence for excessiveness, the appellate court should review the record to ensure that the trial court adequately complied with La.Code Crim.P. art. 894.1. *State v. Smith*, 433 So.2d 688 (La.1983). Article 894.1 contains a list of sentencing guidelines and requires that the trial court "state for the record the considerations taken into account and the factual basis therefor in imposing sentence." La.Code Crim.P. art. 894.1(C). This court, in *State v. Spencer*, 00-1335, p. 7 (La.App. 3 Cir. 2/28/01), 781 So.2d 780, 785, stated:

> The purpose of obligating a trial court to do so "is to insure that each sentence is individualized to the offender and the offense." *State v. Davis*, 511 So.2d 91, 92 (La.App. 3 Cir. 1987). However, to comply with La.Code Crim.P. art. 894.1(C), the trial court is not required to "articulate every circumstance or read through a checklist of items." *State v. Anderson*, 95-1688, p. 4 (La.App. 3 Cir. 5/8/96); 677 So.2d 480, 483. Still, the record should sufficiently establish that the trial court adequately considered the guidelines of La.Code Crim.P. art. 894.1 in particularizing a defendant's sentence. *Id*.

At the sentencing hearing, the defendant's certified criminal history was available to the trial court. Additionally, Mr. Malin's mother and uncle testified about the impact that Mr. Malin's death has had on their family. Victim impact statements from Mr. Malin's father, grandmother, and aunt were also submitted to the trial court. When imposing sentence, the trial court stated that it considered the testimony and the victim impact statements introduced at the hearing, as well as

3

the sentencing guidelines provided in Article 894.1. Further, the trial court specifically discussed several of the aggravating and mitigating factors listed in Article 894.1.[2]

Accordingly, we find that the record indicates that the trial court took proper cognizance of the sentencing factors delineated in Article 894.1.

The second inquiry is whether the sentence imposed is excessive. The trial court has wide discretion in imposing a sentence, and, absent an abuse of discretion, a sentence that is within the statutory guidelines is not deemed constitutionally excessive. *State v. Saucier*, 11-246 (La.App. 3 Cir. 11/9/11), 81 So.3d 691 (quoting *State v. Brandenburg*, 06-1158 (La.App. 3 Cir. 2/7/07), 949 So.2d 625, *writs denied*, 07-538, 07-614 (La. 10/26/07), 966 So.2d 571, 573). Further, in *State v. Dubroc*, 99-730, p. 22 (La.App. 3 Cir. 12/15/99), 755 So.2d 297, 311, this court discussed the review of excessive sentence claims, stating:

> The relevant question on review of a sentence is whether the trial court abused its broad sentencing discretion and not whether the sentence imposed may appear harsh or whether another sentence might be more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674

---

[2] In its discussion of the sentencing guidelines, the trial court made the following findings:

> I find that the defendant is in need of correctional treatment at a custodial environment which can most effectively be provided by a commitment to an institution, and in fact the law requires that he be committed to an institution, and I don't find that to be constitutionally excessive. Any sentence less than what I intend to impose would deprecate the seriousness of the defendant's actions. I disagree with the Defense that his conduct was a mistake or an accident. The beating received by Mr. Malin was severe, it was deliberate, and I think Mr. Herbert today tries to minimize what he did. He knowingly created a risk of great bodily harm, he committed an act of actual violence. He did not use any dangerous weapon or handgun or other firearm, but basically, he and his friend beat Mr. Malin to death.

> As a mitigating circumstance, he has never been involved in this type of activity before. There's no evidence of that. This did not involve any economic offense or controlled dangerous weapon. Mr. Herbert indicates that he did not contemplate any harm, but I find that difficult to believe. He did not act under any strong provocation. There are no grounds that tend to excuse or justify his conduct. Mr. Malin did not do anything that induced or facilitated the commission of the crime against him. It's impossible for Mr. Herbert to compensate the victim's family. Impossible to compensate the victim. And I'm not convinced by the evidence that his conduct was a result of circumstances unlikely to occur.

4

So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). To constitute an excessive sentence, this court must find the penalty imposed is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals; and, therefore, it is nothing more than needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981).

In making the determination of whether a sentence is shocking to our sense of justice or makes no meaningful contribution to acceptable penal goals,

an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La. 7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir. 1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

The defendant argues that, because he is a first felony offender, the trial court erred in imposing the maximum sentence for manslaughter. He also contends that he is not the "worst type of offender" because he is not known to be violent, expressed remorse for his actions and Mr. Malin's death, and that his motivation was a "misplaced sense of chivalry."

The defendant was initially charged with second degree murder, but pled guilty to a reduced charge of manslaughter, a violation of La.R.S. 14:31. At the sentencing hearing, the trial court imposed a sentence of forty years at hard labor, the maximum potential sentence under La.R.S. 14:31. Generally, maximum sentences are reserved for the most serious violation of the offense and the worst type of offender. *State v. Russell*, 42,479 (La.App. 2 Cir. 9/26/07), 966 So.2d 154,

*writ denied*, 07-2069 (La. 3/7/08), 977 So.2d 897. However, "where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense." *State v. Falcon*, 44,829, p. 4 (La.App. 2 Cir. 10/28/09), 26 So.3d 172, 175. We observe that the defendant was initially charged with second degree murder, a violation of La.R.S. 14:30.1, which mandates a sentence of life imprisonment. Accordingly, the defendant's sentencing exposure was substantially reduced by his plea agreement.

The trial court gave oral reasons when imposing the defendant's sentence, stating that he had taken into account the evidence presented at the hearing and the sentencing guidelines provided by La.Code Crim.P. art. 894.1. In those reasons, the trial court acknowledged that the defendant had "never been involved in this type of activity before." However, the trial court disagreed with the defendant's contention that Mr. Malin's death was an accident, finding that the beating administered by the defendant and Mr. Sam was "severe, it was deliberate" and that the defendant was trying to minimize his culpability for the crime. Additionally, a certified criminal history was available to the trial court, which indicated that the defendant had a prior misdemeanor conviction.

Further, in addition to the evidence submitted at the plea and sentencing hearings, the record indicates that trial court ruled on several pre-trial evidentiary issues and was privy to DVD interviews, police reports and grand jury testimony. A trial court may rely on varied sources of information and "may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrest as well as conviction records." *State v. Myles*, 94-217, p. 2 (La. 6/3/94), 638 So.2d 218, 219.

6

A review of comparable cases indicates that maximum or near-maximum sentences for manslaughter have been upheld on a number of occasions. In *State v. Bowman*, 95-667 (La.App. 4 Cir. 7/10/96), 677 So.2d 1094, *writ denied*, 96-2070 (La. 1/31/97), 687 So.2d 400, the defendant was sixteen at the time of the offense and a first offender. The defendant was driving and one of his friends was "fussing" with a pedestrian. The defendant acquiesced to the friend's request that he turn the car around and drive back towards the pedestrian. The friend then shot and killed the pedestrian; the defendant contended that he did not know the friend intended to do so. The defendant was charged with second degree murder, but a jury returned the lesser verdict of manslaughter. After a hearing, the trial court imposed a sentence of thirty-three years at hard labor. The fourth circuit affirmed, finding that the trial court adequately considered the sentencing guidelines and that the sentence was not excessive.

In *State v. Sarkozy*, 99-386 (La.App. 4 Cir. 1/26/00), 755 So.2d 345, the State alleged that the defendant beat the victim to death with a hammer after the victim refused to loan him a quarter. The defendant was charged with second degree murder; however, a jury found him guilty of the lesser charge of manslaughter. The trial court imposed the maximum sentence even though the defendant was a first offender. The trial court found that the crime was deliberately cruel, that the defendant was not acting in self-defense, and that he showed no remorse. On appeal, the fourth circuit found that the sentence was not constitutionally excessive. *See also Falcon*, 26 So.3d 172; *State v. Black*, 28,100 (La.App. 2 Cir. 2/28/96), 669 So.2d 667, *writ denied*, 96-836 (La. 9/20/96), 679 So.2d 430.

Based on our review of the record, we find that the trial court did not abuse its broad sentencing discretion in imposing the maximum sentence. The trial court

found that the defendant committed an act of actual violence and that the beating received by the victim was severe and deliberate. Further, the trial court found that the defendant tried to minimize his culpability for the crime. Although the defendant is a first felony offender, he received a significant benefit by pleading guilty to manslaughter instead of second degree murder. Further, our review of similar cases indicates that courts have upheld maximum or near-maximum sentences for cases for manslaughter in circumstances similar to those of the defendant.

This assignment of error is without merit.

## DECREE

The sentence of the defendant, Thomas Blake Herbert, for the charge of manslaughter, a violation of La.R.S. 14:31, is affirmed.

**AFFIRMED.**

12-228

**STATE OF LOUISIANA**

**VERSUS**

**THOMAS HERBERT**


**THIBODEAUX, Chief Judge, dissenting.**


The defendant's only past record is a nonviolent misdemeanor offense. The jurisprudence is clear. Maximum sentences are reserved for the most egregious offenses and the worst type of offender. In imposing a forty-year sentence for a first time felony offender, the trial court abused its sentencing discretion. While I do not wish to minimize the severity of this offense, I find that the maximum sentence in this case makes no meaningful contribution to acceptable penal goals and only results in enhancing Louisiana's position as the incarceration capital of the world.

For the foregoing reasons, I respectfully dissent.