# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 19-373 consolidated with KH 19-431


**STATE OF LOUISIANA**

**VERSUS**

**DESTIN REDER**

**AKA- DESTIN NATHANIEL REDER**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 90103
HONORABLE SCOTT WESTERCHIL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## BILLY HOWARD EZELL
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, D. Kent Savoie, and Van H. Kyzar, Judges.


**AFFIRMED.**

**Paula C. Marx**
**Louisiana Appellate Project**
**P. O. Box 82389**
**Lafayette, LA 70598-2389**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Destin Reder**

**Asa Allen Skinner**
**District Attorney, 30th Judicial District Court**
**Terry W. Lambright**
**First Assistant District Attorney**
**P. O. Box 1188**
**Leesville, LA 71496-1188**
**(337) 239-2008**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**EZELL, Judge.**

On September 21, 2016, Defendant, Destin Reder, was indicted for the second degree murder of Samantha Johnson Reder, a violation of La.R.S. 14:30.1. On January 25, 2019, Defendant withdrew his plea of not guilty and entered a plea of guilty to manslaughter, in violation of La.R.S. 14:31. A presentence investigation report (PSI) was ordered. Defendant was sentenced on March 13, 2019, to serve forty years at hard labor and given credit for time served. On March 15, 2019, Defendant filed a Motion to Reconsider Sentence. The Motion to Reconsider Sentence was denied on March 18, 2019. A Motion for Appeal and Designation of Record was filed on March 26, 2019, which was granted. On appeal, Defendant asserts a single assignment of error of excessive sentence. We find the assignment of error lacks merit.

## FACTS

The following factual basis for the plea was provided by the State:

[O]n or about the date alleged in the bill of information, this defendant had gotten off of work from McDonald's. He had borrowed a vehicle from a neighbor, he and another person went to get alcohol. They came back a couple of hours later. The vehicle was returned to the person. He and Mrs. Reder, Samantha Reder, the decedent in this case and victim, went back to their home. It is alleged that the State can prove that during that period of time that these two were in an argument, that apparently they became involved in a physical altercation and as a result of that physical altercation, this defendant did strangle Mrs. Samantha Reder until she stopped breathing and died. Subsequently, Your Honor, when the police arrived, Mr. Reder gave a story different from that and told the officers that this did not happen that way and that she had taken an overdose. And, subsequently, as a result of telling the EMT people that she had taken an overdose, they treated it as if it was an overdose trying to save her life and were unable to do so and she was deceased. Later he admitted that they had been in an argument and that he had choked her and she had died as a result of strangulation and suffocation. This all occurring in Vernon Parish on the date alleged in the bill of information when that occurred, Your Honor.

Although Defendant did not agree with all of the factual basis offered by the State, his counsel stated Defendant agreed to "the basic fact that Mr. Reder and his wife were in an argument that resulted in a physical altercation where he strangled her resulting in her death[.]"

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR

In his sole assignment of error, Defendant contends that the sentence imposed by the trial court is excessive. As noted above, Defendant filed a Motion to Reconsider Sentence, which alleged the sentence of forty years was excessive as it "is grossly disproportionate to the seriousness of the offense, makes no measurable contribution to acceptable goals of punishment, and is nothing more than the purposeless imposition of pain and suffering." The motion also alleged that the sentence was a manifest abuse of discretion and that the trial court failed to adequately consider applicable mitigating circumstances; however, the motion did not specify which mitigating circumstances the trial court should have considered.

Defendant pled guilty to manslaughter, which is punishable by imprisonment at hard labor for not more than forty years. Thus, Defendant received the maximum sentence. La.R.S. 14:31.

At sentencing, the court heard or received victim impact statements from the victim's great aunt, Cynthia Smith; the victim's mother, CaTina Fulton; Defendant's sister, Avonda Reder; Defendant's cousin, Kyra Dubose; Defendant's aunt, Sylvia L. Garner; and Defendant's uncle, Danny Garner. One of the letters

2

offered by Defendant is not signed and does not indicate the name of the writer or his/her relationship to Defendant.

Cynthia Smith, who spoke at sentencing, stated that the lives of the victim's and Defendant's son and Defendant's two step-children were destroyed. The children were in counseling, and the children were not doing well.

CaTina Fulton explained how her life drastically changed as a result of her having to raise her grandchildren; that her daughter, the victim, called her every morning and texted her throughout the day; that her daughter and her son were her best friends; and how her son was there for her and the grandchildren during this difficult time.

Avonda Reder stated her brother was "one of the sweetest young men you could ever meet[.]" As Defendant got older, he suffered from depression and bipolar disorder. She stated that Defendant dearly loved his wife and children. Defendant's sister asked Defendant be given another chance.

Kyra Dubose stated the victim knew Defendant had mental problems and took advantage of that. She also stated the victim would still be here if it were not for the drugs and alcohol consumed on the night of the offense and the victim constantly antagonizing the Defendant. She asked the court to consider Defendant's young age and the fact that he had two young sons he loved very much. Finally, she asked the court to give Defendant another chance.

Sylvia L. Garner stated, "I saw how [the victim] beat him[,] and she used a knife to cut him in the mouth, head, and back five months before her death[,] and I [pleaded] with them both to leave each other alon[e]." She also stated that this would not have happened without the alcohol and drugs.

Danny Garner said Defendant was a good kid and had been through a lot. He believed Defendant could be an asset to society. He requested mercy be shown to Defendant.

The trial court noted Defendant was twenty-five years old. The trial court also noted the following facts of the case as indicated in the PSI. Defendant initially claimed the victim committed suicide. He changed his story a couple of times before he admitted to choking her "until her eyes began to flutter and she fell off of him." The trial court also noted that the PSI indicated Defendant confessed to another inmate that he deliberately murdered the victim. According to the trial court, the autopsy report concluded the victim died as a result of suffocation and strangulation, the wounds were consistent with manual strangulation, and the DNA report concluded the embedded fingernail found in the victim's neck belonged to Defendant.

In discussing the factors in La.Code Crim.P. art. 894.1 that it considered, the trial court stated:

> [W]as there economic harm caused to the victim? Well, not necessarily to the victim, but certainly to the victim's family because they've undertaken taking care of the two young children who are left without their mother. There are no substantial grounds that exist that tend to justify or excuse Mr. Reder's criminal conduct. He did not act under strong provocation by the victim or of anyone else.
>
> He's twenty-five years of age, he's not married; however, he has three children. He's also in good health. He has an employment record where he has performed custodial -- construction work and worked at McDonald's in the past. His education is that he completed the eleventh grade and has advised that he plans to obtain his GED. He has -- also, as far as a history of drug and alcohol abuse, he's admitted to the use of marijuana since he was thirteen years of age, but the Court has no indication that he was ever -- or that he has ever received any drug or alcohol treatment in the past.
>
> He does have a prior criminal record which consists of on May the 4th of 2011 in the Thirty-Sixth Judicial District Court in

Beauregard Parish, he pled guilty to possession of marijuana. He was sentenced to 180 days, that was suspended and he was placed on one year of probation. That probation was subsequently revoked on May the 9th, 2012. On May the 30th of 2012 in the Thirty-Sixth Judicial District Court in DeRidder, he pled guilty as charged to the offense of resisting an officer and sentenced to serve 15 days in the parish jail. On November the 5th, 2014, also in the Thirty-Sixth Judicial District Court in DeRidder, Louisiana, he pled guilty to the reduced charge of no driver's license on person, sentenced to 30 days in the parish jail, suspended, one year probation. That probation was also revoked on March the 12th of 2015. On December the 4th of 2015 in the Thirty-Sixth Judicial District Court in Beauregard Parish, he pled guilty to the reduced charge of domestic abuse battery after having been originally charged with a felony. He was sentenced to 180 days in the Beauregard Parish Jail, 150 days suspended, two years of probation. His probation for that offense was subsequently revoked on August 25th, 2016.

The Court takes into consideration all of these factors in determining that this defendant is unlikely to respond favorably to probationary treatment as he has failed to successfully complete three previous probation revocations from May 9th, 2012 to March the 12th of 2015 and August 25th of 2016.

The Court also finds that there is an undue risk that during the period of a suspended [sentence] or probation that this defendant would commit another crime. And, further, this Court finds that this defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by commitment to a penal institution.

Furthermore, a -- the Court finds that lesser sentence would deprecate the seriousness of this defendant's offense based upon the fact that this was originally a second degree murder pled to a manslaughter that involved a husband basically strangling his wife to death and leaving his -- leaving two minor children without their mother and requiring other family members to take care of those babies and who have to deal with these memories for the rest of their lives.

The trial court imposed the maximum sentence of forty years at hard labor with credit for time served from the date of Defendant's arrest.

Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of

5

discretion. *State v. Barling*, 00–1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042–43 (citing *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99), 746 So.2d 124, *writ denied*, 00–165 (La. 6/30/00), 765 So.2d 1067).

. . . .

"[Louisiana] Const. art I, § 20, guarantees that, '[n]o law shall subject any person to cruel or unusual punishment.' " *Barling*, 779 So.2d at 1042–43. "To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering." *Id.* at 1042 (citing *State v. Campbell*, 404 So.2d 1205 (La.1981)).

The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *Barling*, 779 So.2d at 1042–43 (citing *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996)). In reviewing the defendant's sentence, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99–433 (La. 6/25/99), 745 So.2d 1183. "[T]he appellate court must be mindful that the trial court is in the best position to consider the aggravating and mitigating circumstances of each case. . . ." *State v. Williams*, 02-707 (La.App. 3 Cir. 3/5/03), 839 So.2d 1095, 1100 (citing *Cook*, 674 So.2d 957).

*State v. Rexrode*, 17-457, pp. 3-4 (La.App. 3 Cir. 11/15/17), 232 So.3d 1251, 1253-54 (alterations in original). "Generally, maximum sentences are reserved for the most serious violation of the offense and the worst type of offender." *State v. Herbert*, 12-228, p. 5 (La.App. 3 Cir. 6/13/12), 94 So.3d 916, 920, *writ denied*, 12-1641 (La. 2/8/13), 108 So.3d 78. "[I]n the context of a maximum-sentence analysis for manslaughter, where the evidence would otherwise support a murder conviction, Defendant can be considered 'the worst type of offender.'" *State v. Ayala*, 17-1041, p. 7 (La.App. 3 Cir. 4/18/18), 243 So.3d 681, 687-88.

Defendant was twenty-two years old at the time of the offense and asserts his youth as a mitigating factor. He cites *Johnson v. Texas*, 509 U.S. 350, 368, 113 S.Ct. 2658 for the proposition that "[t]he relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside." In short, he claims that youth reduces criminal culpability citing *Roper v. Simmons*, 543 U.S. 551. 125 S.Ct. 1183 (2005).

We note the Motion to Reconsider Sentence contained no specific allegation regarding Defendant's youth. Also, at sentencing, other than offering letters for the trial court's review, counsel for Defendant made no argument on Defendant's behalf. Additionally, the Supreme Court, in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012), decided to treat those who commit murder when they are under the age of eighteen at the time of the offense differently, and that decision is inapplicable to Defendant, who was twenty-two years old at the time of the offense.

Defendant further asserts the trial court failed to particularize the sentence to him. In addition to his youth, he points out that his criminal history is limited to misdemeanor offenses; thus, as a first felony offender, Defendant asserts he should not have received a maximum sentence. He acknowledges that one of his misdemeanor offenses was for domestic abuse battery, but states that he was stabbed by the victim a number of times during that fight and that the victim was much larger than him. Defendant points out the letters submitted at sentencing described him as a wonderful child and sweet young man, referenced his depression and bipolar disorder, and pointed out he has supported his family,

7

including his child and step-children. Finally, Defendant states in brief (footnotes omitted):

> Destin Reder and Samantha Johnson Reder had a tumultuous relationship, with arguments being a common occurrence. They had physically fought in the past with injuries caused by both of them. Destin Reder admitted they fought on the day of Samantha's death, and he choked her causing her death. Destin accepted responsibility for his actions and pled guilty to the crime of manslaughter.
>
> Destin is a young first felony offender. With only a minimal misdemeanor criminal record, he is not one of the worst offenders deserving of a maximum sentence for this offense. A maximum forty year sentence is not supported herein.

The State asserts the trial court took full notice of the Defendant's age, education, and employment history. Regarding Defendant's "downplay" of the incident which resulted in the domestic abuse battery conviction, the State asserts:

> Further, regarding the defendant's assertion that he was stabbed by his wife, the State notes that the police incident report of the episode is contained in the record of this case. In fact, during the incident the defendant knocked his wife to the floor, causing her to strike her head on the concrete, whereupon he jumped on her and choked her almost to unconsciousness, until she reached for a nearby knife and stabbed the defendant to end his vicious attack on her. The State submits that these facts hardly amount to "mitigating factors", warranting a more lenient sentence.

With respect to Defendant's assertion that he was diagnosed with bipolar disorder, the State asserted the following in brief:

> [T]his contention is not supported by the record. Relating to the same incident in which the defendant attacked and choked his wife, he volunteered to the interviewing officer that "he is bipolar and takes medication for his condition." He also stated that "he had been off his medication for a long period of time.["]
>
> In the handwritten letters offered by the defendant prior to his sentencing, the defendant's sister stated that, after he "got older he suffered from depression and bi-polar disorder." Another of defendant's friends, Ms. Dubose, wrote that "he had mental problems."

However, the State notes that, contrary to these unsubstantiated hearsay assertions and his contention in brief, the record contains no evidence that the defendant ever received a medical diagnosis of depression, bipolar disorder, or any other drug-related or mental condition. During his plea, the court asked the defendant whether he had ever been treated for any kind of mental illness, brain or head injury which would affect his ability to understand the proceedings, and the defendant answered "no sir".

The record in this case contains no evidence the defendant was ever treated or diagnosed for any such illness, and neither the defendant nor his trial counsel mentioned any such condition to the prosecutor or trial court, at any time, either pretrial, during his plea, or in any post-trial motions, including his motion to reconsider sentence. The defendant did not claim that he was incompetent to stand trial or to assist his attorney, and did not seek an evaluation by a sanity commission.

Finally, the State asserts that Defendant did not "accept responsibility for his crime" as he lied to medical personnel and officers who responded to the crime scene and to officers during his custodial statement. The State notes Defendant accepted a plea to a "vastly-reduced charge only when he realized that the evidence against him was overwhelming and irrefutable, including positive DNA identification of part of his fingernail that was imbedded in his dead wife's neck during his savage attack on her."

Defendant does not cite any cases that suggest a sentence of forty years for manslaughter is excessive for a young defendant with no prior felony convictions. Conversely, the State's brief cites the following cases supporting the maximum sentence: *State v. Angelle*, 13-508 (La.App. 3 Cir. 11/6/13), 124 So.3d 1247, and *writ denied*, 13-2845 (La. 5/23/14), 140 So.3d 724, *writ denied*, 13-2892 (La. 8/25/14), 147 So.3d 693; *State v. Dupuis*, 15-554 (La.App. 3 Cir. 12/9/15) (unpublished opinion); and *State v. King*, 48,335 (La.App. 2 Cir. 8/7/13), 122 So.3d 1042, *writ denied*, 13-2017 (La. 5/2/14), 138 So.3d 1238.

In *Angelle*, 124 So.3d 1247, the defendant was charged with second degree murder but pled guilty to manslaughter and received the maximum sentence of forty years at hard labor. He was a first-time offender who expressed remorse for fatally shooting the victim at a night club. This court found the trial court did not abuse its discretion in sentencing the defendant.

The defendant in *Dupuis*, 15-554, was initially charged with first degree murder after strangling her eighty-three-year-old mother to death; however, the State amended the charge to manslaughter. The defendant pled guilty to the amended charge and was sentenced to the maximum of forty years. The trial court noted the defendant had not abused or neglected the victim, the defendant was a first-time offender, and the defendant had limited mental abilities. This court found the trial court did not abuse its discretion in sentencing the defendant.

In *King*, 122 So.3d 1042, the defendant was a thirty-three-year-old fourth felony offender who had been indicted for second degree murder and two counts of attempted second degree murder; he pled guilty to manslaughter. The defendant fired numerous rounds at a family barbeque injuring two victims and causing the death of another. As part of the plea, the State dismissed the two counts of attempted second degree murder and agreed not to charge defendant as a habitual offender. He was sentenced to the maximum sentence of forty years at hard labor. The second circuit found no merit to defendant's excessive sentence claim.

Additionally, we find the following jurisprudence relevant to the issue at hand. In *State v. Tutson*, 18-738 (La.App. 3 Cir. 3/7/19), 270 So.3d 684, *writ denied*, 19-540 (La. 10/1/19), 280 So.3d 167, the defendant was charged with second degree murder but was convicted by a jury of manslaughter. The defendant was a twenty-year-old first felony offender when he intentionally shot the victim in

10

the back. He was sentenced to forty years at hard labor. On appeal, he asserted his maximum sentence was excessive particularly considering the lack of prior felony convictions and the fact that he was twenty years old at the time of the offense. This court found the trial court did not abuse its discretion in imposing the maximum sentence.

The defendant in *State v. Soriano*, 15-1006 (La.App. 3 Cir. 6/1/16), 192 So.3d 899, *writ denied*, 16-1523 (La. 6/5/17), 219 So.3d 1111, a twenty-five-year-old charged with second degree murder for fatally stabbing the victim, was convicted by a jury of manslaughter. This court held that despite defendant being a first felony offender, the trial court did not abuse its discretion in imposing the maximum sentence of forty years, because the defendant resorted to unnecessary violence which ultimately caused the victim's death.

In *State v. White*, 48,788 (La.App. 2 Cir. 2/26/14), 136 So.3d 280, *writ denied*, 14-603 (La. 10/24/14), 151 So.3d 599, a nineteen-year-old first felony offender was convicted of manslaughter and sentenced to forty years at hard labor. The defendant and his two brothers engaged in two fist fights with the victim. Following the second fight, defendant obtained a handgun and fired two rounds, fatally striking the victim. As mitigating factors, the defendant highlighted his youth, lack of prior felony convictions, and the fact that he had a learning disability. Despite these mitigating factors, the second circuit found the trial court did not abuse its discretion in imposing the maximum sentence.

Based on the facts of the offense and the above-cited cases, we find the trial court did not abuse its discretion when imposing the maximum sentence. Thus, that sentence is not excessive.

## <u>CONCLUSION</u>

The Defendant's sentence is hereby affirmed.

**AFFIRMED.**