# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-317

**STATE OF LOUISIANA**

**VERSUS**

**DOUGLAS WAYNE PONTHIEUX**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 332,600
HONORABLE WILLIAM GREGORY BEARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Shannon J. Gremillion, and Charles G. Fitzgerald, Judges.

**CONVICTION AND SENTENCE AFFIRMED.**

**Edward K. Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Douglas Wayne Ponthieux**

**J. Phillip Terrell, Jr., District Attorney**
**Ninth Judicial District Court**
**Catherine L. Davidson**
**Assistant District Attorney**
**P. O. Box 7358**
**Alexandria, La 71306-7358**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**GREMILLION, Judge.**

Defendant, Douglas Wayne Ponthieux, was convicted of manslaughter in violation of La.R.S. 14:31 and sentenced to 40 years at hard labor for the March 2017 strangulation of his long-time girlfriend, Connie Ducote Patterson.

## PROCEDURAL BACKGROUND

On June 28, 2017, Defendant was charged by grand jury indictment with the second degree murder of Patterson, in violation of La.R.S. 14:30.1. On August 7, 2017, Defendant filed a pro se "Application for Appointment of Sanity Commission." A hearing was set for Defendant's motion on September 18, 2017. At the September 18, 2017 hearing, Defendant told the court he did not know anything about the pro se motions because "[s]omebody else did it for me and just had me to [sic] sign it and they mailed it off. I don't know nothing about the motion." Defendant subsequently asked that all of the pro se motions be dismissed, which the trial court allowed.

On September 25, 2017, defense counsel filed a "Motion to Strike Defendant's *Pro Se* Motion to Appoint Sanity Commission, Motion to Reduce Bond, and Motion for New Attorney" on the grounds someone other than Defendant or his attorney prepared and submitted the motions. A hearing was held on October 24, 2017, at which time the trial court denied the motion to strike, noting Defendant was represented and literate at the time he chose to have the motion prepared and that it contained the same defense Defendant had presented all along, that he was having a seizure when he strangled the victim.

On January 8, 2018, an "Order to Re-set" was issued by the trial court, noting that "[p]ursuant to this Court's re-allotment order, this matter has been re-allotted from Section 2/Division C to Section 3/Division G." This appears to be a reference to an August 30, 2017 order issued by the Ninth Judicial District Court related to all

criminal cases and bearing the signature of all seven judges of the court. We are unaware of any objection being filed prior to trial regarding the re-allotment.

On November 4, 2019, Defendant entered a blind plea of guilty to the reduced charge of manslaughter, acknowledging his sentence would be within the statutory range of zero-to-forty years at hard labor. On January 27, 2020, the trial court sentenced Defendant to a maximum sentence of forty years at hard labor. Trial counsel raised a non-specific objection to the sentence.

On February 26, 2020, Defendant filed a "Motion to Reconsider Sentence with Incorporated Memorandum," alleging that his sentence was excessive for the following reasons: (1) Defendant contends the second degree murder charge was "overcharged" and the court should not have considered his plea to manslaughter to be a benefit to him; (2) the trial court failed to "properly consider Defendant's ability to form the intent necessary for conviction"; (3) the trial court placed too much emphasis on Defendant's prior domestic abuse history, as the last conviction was roughly nineteen years prior to Defendant's offense; and (4) the trial court did not properly consider Defendant's "Sentencing Memorandum." The motion was denied the same day.

Defendant now appeals his conviction and sentence, and assigns as error:

1. The trial court erred in accepting [Defendant's] open ended guilty plea to manslaughter.

2. The trial court erred in imposing the maximum sentence for manslaughter.

3. The trial court erred in allowing [Defendant's] case to be transferred from its allotted, Division C, to another division, Division G.

For the following reasons, Defendant's conviction and sentence are affirmed.

## FACTS

Although no factual basis was given at the time of Defendant's guilty plea, the trial court noted the following at sentencing:

> On March second, 2017, the defendant and Connie Patterson got into a physical argument that resulted in the defendant being arrested for attempted second degree murder and second degree battery. On March third, 2017, Connie Patterson died. She was fifty-six years old. Her cause of death was listed as strangulation by a towel wrapped around her neck and drowning. The autopsy report stated that there was evidence that pressure on the neck consistent with the strangulation using padding, such as a towel. The report further stated that there was water in the sinus cavities thought to be as a result of breathing water while alive.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, Defendant contends the trial court erred in accepting his open-ended guilty plea to manslaughter. This claim is predicated on a misunderstanding of what occurred prior to, and on, September 18, 2017. As the original record did not contain a copy of the "Motion to Appoint Sanity Commission" that was filed on August 7, 2017, or a copy of the September 18, 2017 hearing, appellate counsel argued, based upon a minute entry, that Defendant's sanity was raised by counsel and then withdrawn, without hearing, by substitute counsel. However, the motion was actually a pro se filing which contained a statement that it was prepared by another inmate, one John Andrew Borskey, Jr. Furthermore, at the September 18, 2017 hearing, Defendant stated that he knew nothing about the motion, that someone else had written it for him, and he just signed it. At that point, Defendant personally requested that the motion be dismissed.

Furthermore, although trial counsel filed a "Motion to Withdraw 'Not Guilty' Plea and Enter a Plea of "Not Guilty and Not Guilty by Reason of Insanity" on October 22, 2019, no request for a sanity commission was made therein. Defendant

then pleaded guilty to a reduced charge less than a month later without ever having a hearing on changing his plea.

Defendant's contention that he was "deprived of his due process rights by the trial court's actions" lacks merit. Although it is true that La.Code Crim.P. art. 643 requires a court to appoint a sanity commission "when it has reasonable ground to doubt the defendant's mental capacity to proceed," Defendant fails to establish that a reasonable ground existed to give the court a question about his sanity. Trial counsel never felt the need to request a sanity commission, and Defendant himself dismissed the pro se motion as simply a document he signed after someone else prepared it. Accordingly, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, Defendant contends the trial court erred in imposing a maximum sentence for manslaughter. Louisiana Code of Criminal Procedure Article 881.1 provides the mechanism for preserving the review of a sentence on appeal:

> A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
>
> . . . .
>
> E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

Although trial counsel raised multiple specific claims as to why Defendant's sentence should be considered excessive, appellate counsel does not actually argue those specific points. Instead, appellate counsel merely argues that Defendant is not the most egregious offender and that it is therefore excessive for him to receive a

4

maximum sentence. Therefore, Defendant has waived review of the issues raised in the motion to reconsider. As such, we review the claim as a general excessiveness claim. Louisiana courts have laid out the following guidelines with regard to excessive sentence review:

Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:

La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best

> position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996)].

*State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

Furthermore, in *State v. Baker*, 06-1218 (La.App. 3 Cir. 4/18/07), 956 So.2d 83, *writ denied*, 07-320 (La. 11/9/07), 967 So.2d 496, and *writ denied*, 07-1116 (La. 12/7/07), 969 So.2d 626, this court adopted the fifth circuit's three-factor test from *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183, which established that an appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes.

Under *Baker*, the first consideration is the nature of the crime. Defendant was convicted of manslaughter, a violent offense under La.R.S. 14:2, which resulted in the death of his long-time girlfriend, Connie Patterson. By its very nature, manslaughter is one of the worst offenses in our criminal code, just a step below murder due to either provocation or lack of intent to kill. Defendant was initially charged with second degree murder, a crime that carries a mandatory life sentence. His guilty plea reduced his sentencing exposure from life to a maximum of forty years.

The second *Baker* factor is the nature and background of the defendant. Although Defendant is a first-time felony offender, his criminal history includes multiple arrests for stalking and violations of protective orders issued to multiple prior significant others, as well as a 1998 misdemeanor conviction for violation of a protective order. The trial court noted Defendant had stalked and/or harassed his three prior spouses. The trial court also made the following finding at sentencing:

6

The defendant's prior actions with women show that he will likely commit another crime involving domestic abuse. Two, the defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution…. Three, a lesser sentence would deprecate the seriousness of the defendant's crime.

Trial counsel gave further details regarding Defendant's personal history in its sentencing memorandum, noting that Defendant would be sixty-two at sentencing, that he has several ongoing medical issues, and that he has a history of seizures and a prior brain injury. Additionally, trial counsel referenced an expert opinion rendered by Dr. Joseph Sesta, which indicated Defendant's IQ was between sixty-eight and seventy-six, classifying Defendant's mental functioning as borderline to mildly impaired. Dr. Sesta's report also found Defendant's "response to a traumatizing or upsetting situation would likely be longer lasting than a normal person's response to the same situation."

The final *Baker* factor is a comparison of sentences imposed for similar offenses. Louisiana courts have upheld a myriad of sentences for manslaughter convictions. Defendant cites numerous opinions of this court in which lesser sentences were upheld for manslaughter, including a twenty-year sentence for a first offender who killed a victim with a single blow from a stick in *State v. Batiste*, 07-482 (La.App. 3 Cir. 10/31/07), 969 So.2d 704; and a thirty-year sentence for a thirty-eight-year-old multiple felon who shot his victim twice at close range in *State v. Brown*, 08-442 (La.App. 3 Cir. 11/12/08), 997 So.2d 875, *writ denied*, 09-232 (La. 10/30/09), 21 So.3d 279. The State cites multiple cases in which maximum sentences were upheld for first-offenders, including *State v. Hebert*, 12-228 (La.App. 3 Cir. 6/13/12), 94 So.3d 916, *writ denied*, 12-1641 (La. 2/8/13), 108 So.3d 78; and *State v. Johnson*, 38,415 (La.App. 2 Cir. 7/14/04), 878 So.2d 869, *writ denied*, 05-589 (La. 1/13/06), 920 So.2d 222.

7

At sentencing, the trial court specifically noted multiple cases in which this court upheld maximum sentences for first offenders charged with second degree murder who pled to manslaughter, including *Hebert*; *State v. Reder*, 19-373, 19-431 (La.App. 3 Cir. 12/18/19), 286 So.3d 644, *writ denied*, 20-216 (La. 7/24/20), 299 So.3d 74; and *State v. Angelle*, 13-508 (La.App. 3 Cir. 11/6/13), 124 So.3d 1247, *writ denied*, 13-2845 (La. 5/23/14), 140 So.3d 724, and *writ denied*, 13-2892 (La. 8/25/14), 147 So.3d 693. The following excerpt is particularly relevant to the case *sub judice*:

> "Generally, maximum sentences are reserved for the most serious violation of the offense and the worst type of offender." *State v. Herbert*, 12-228, p. 5 (La.App. 3 Cir. 6/13/12), 94 So.3d 916, 920, *writ denied*, 12-1641 (La. 2/8/13), 108 So.3d 78. "[I]n the context of a maximum-sentence analysis for manslaughter, where the evidence would otherwise support a murder conviction, Defendant can be considered 'the worst type of offender.' " *State v. Ayala*, 17-1041, p. 7 (La.App. 3 Cir. 4/18/18), 243 So.3d 681, 687-88.

*Reder*, 286 So.3d at 649.

Defendant was initially charged with second degree murder of Patterson after an argument between the two resulted in Defendant wrapping a towel around the victim's neck and choking her, ultimately leading to her death. The evidence could have supported a second degree murder conviction. As has been previously noted, the pertinent question on appeal is whether the trial court abused its great discretion at sentencing. Given the cases discussed above and the facts of this case, we cannot say the trial court abused its discretion in imposing a maximum sentence. Accordingly, this assignment of error lacks merit.

**ASSIGNMENT OF ERROR NUMBER THREE**

In his final assignment of error, Defendant contends the trial court erred in allowing his case to be transferred from Division C to Division G of the Ninth Judicial District Court. This action was taken in accordance with a District Court

Order, issued on August 30, 2017, bearing the signature of all the judges of the Ninth Judicial District, which set forth the terms of the court's bench rotation. Although appellate counsel contends this reallotment was already struck down by this court in *State v. Strong*, 18-955 (La.App. 3 Cir. 12/5/18) (unpublished opinion), that argument is flawed.

In *Strong*, following the reallotment order and the retirement of Judge Thomas Yeager, it came to light that two of the judges in the Ninth Judicial District Court had chosen to switch which cases they would be hearing outside the order. This court granted a motion by the defendant to have the case reallotted to the judge who should have been hearing the case under the allotment order. In the case *sub judice*, there is no evidence presented to suggest there was any improper switching of cases beyond the annual rotation. Additionally, the trial attorney who represented the defendant in *Strong* is the same attorney who represented Defendant throughout the lower court proceedings. At no point did he ever object to or attack the reallotment of the instant case. Accordingly, Defendant's reliance on *Strong* is misplaced and this assignment of error lacks merit.

## DECREE

Defendant's conviction and sentence are affirmed.

**CONVICTION AND SENTENCE AFFIRMED.**

9